363 A.2d 1318

**CONTINENTAL BANK**

**v.**

**Jerome MARCUS and Pearl Marcus, his wife, and Charles E. Halvorsen and Barbara H. Halvorsen, his wife, Appellants.**

Superior Court of Pennsylvania.

Sept. 27, 1976.

372

Steven A. Rosen, N. Johelson, Philadelphia, for appellants.

McTighe, Brown, Weiss, Bonner & Stewart, P. C., Desmond J. McTighe, Norristown, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge.

This is an appeal to our Court from a Decree dated September 4, 1975, finalizing the Decree Nisi of November 29, 1974. Appellee has sought in its equity action a reconveyance of certain real estate from appellants Halvorsen to appellants Marcus. Continental Bank is a judg-

ment creditor of the Marcuses and alleged a fraudulent conveyance to defeat its creditor rights.

From 1969 to 1971, appellant Jerome Marcus served as president of Tobaccoland, Inc., a business engaged in owning and franchising tobacco shops. On September 15, 1969, appellants Marcus individually both executed an "unlimited surety agreement" in favor of appellee, on the strength of which agreement appellee loaned money to Marcus' business.[1] The total loan was partially secured by notes of Tobaccoland's franchises over to the franchisor, and partially by stock which was not readily transferrable. With the loan in default and the bank's efforts at selling the stock failing,[2] the bank took judgment on May 3, 1971, for $173,197.21, an amount not presently in dispute. Although the loan agreement between these parties provides that demand in the event of default is waived, counsel for the bank, on April 19, 1971, made demand.

On April 12, 1971, the Marcuses transferred the real property where they resided to the Halvorsens, their daughter and son-in-law, for the nominal consideration of $1.00.[3] The conveyance was made under and subject "to the payment of a contained mortgage debt or principal sum of thirty five thousand ($35,000.00) dollars, cents (sic) reduced by payments on account of principal together with interest thereon as the same may accure (sic)". The fair market value of the property at the time of the conveyance was $39,000.00.[4]

Concurrently with the transfer to the Halvorsens the Marcuses leased the property back from them, obligating themselves for a term of five years at a total cash rental

1. While the record indicates that the amount of indebtedness varied throughout the life of the agreement, testimony shows that it stood at $155,508.08 on April 12, 1971.

2. The stock was of Information Interscience, Inc., and at that time had no market.

3. Whether or not this one dollar was actually paid does not concern us.

4. The uncontradicted testimony of appellant, J. Marcus.

of $18,780.00, or $313.00 per month, this monthly rental being the exact amount of the mortgage monthly payments.[5] The Marcuses continued to be bound to the mortgage, and they made the rental payments directly to the mortgagee, as the lease provided. Further, under the lease, it was the obligation of the Marcuses, for the stated term, to pay any water and sewer rents, insurance, and applicable taxes.

Appellee's complaint sought, *inter alia*, a reconveyance of the property to the Marcuses, arguing that the transaction was fraudulent as to the appellee, a creditor. Following trial, and in support of the Decree Nisi, Chancellor TREDINNICK, J., found, as a matter of fact, that the personal assets of the Marcuses immediately prior to the conveyance were $16,000.00. He further found as fact that the amount of appellee's judgment was $173,-197.21, which judgment included at the time of the trial (August 6, 1974) the sum of $84,266.35 owed primarily by Tobaccoland, Inc. The lower court concluded that the conveyance violated the "Uniform Fraudulent Conveyance Act", Act of 1921, May 21, P.L. 1045, No. 379, 39 P. S. § 351 *et seq.* (hereinafter referred to as "the Act"). The Decree Nisi declared the deed fraudulent and void, ordered a reconveyance to the Marcuses, and forbade the Halvorsens from conveying the premises in any other way. Exceptions were filed and dismissed, and it is the Decree dismissing Exceptions and finalizing the Decree Nisi which is now appealed. There are two pertinent sections of the Act, which sections are as follows:

Section 4 (39 P.S. § 354):

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent, is fraudulent as to creditors, without regard to

5. The correct total should be $18,680.00 for the term. The monthly rental was increased to $320.00 when the mortgagee increased the amount due, the record being silent as to the reason.

his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration.

Section 7 (39 P.S. § 357):

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

■ Under Section "4" of the Act any conveyance or obligation incurred by an insolvent, or by one rendered insolvent by the conveyance or obligation, without receipt of fair consideration is fraudulent as to creditors without regard to intent. Insolvency is a condition existing "when the present, fair, salable value of his [a person's] assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured" the Act, section 2, 39 P.S. § 352. Such a debt need not be matured, liquidated, absolute, or fixed; it will be taken to mean only "legal liability" and it may be contingent. *Baker v. Geist*, 457 Pa. 73, 321 A. 2d 634 (1974). The debt here to appellee, existing as of April 12, 1971, was $155,508.08.[6]

■ Accepting $39,000.00 as the fair market value of the property, and accepting the lower court's finding that prior to the conveyance the personal equity of the Marcuses was $16,000.00, it is evident that the Marcuses were insolvent in the face of a debt or legal liability of $155,-508.08. Thus the conveyance was by one who was at the time insolvent; but for section "4" to be violated, there must also be absence of fair consideration. In and of itself, the one dollar recitation is inadequate consideration. Here, however, the Halvorsens took under and subject to the mortgage outstanding, thus giving a benefit to the Marcuses of an amount of $35,000.00. This could be

6. This is the amount for which Tobaccoland, Inc., was primarily liable on April 12, 1971 and is part of the total judgment, as filed later, in the amount of $173,197.21.

considered "fair consideration". See *First National Bank of Marietta v. Hoffines,* 429 Pa. 109, 239 A.2d 458 (1968). However we will consider the entire fabric of the dealings between Halvorsens and Marcuses, to-wit, the deed and the contemporaneous lease. By the latter instrument, the Marcuses bound themselves to a debt of at least $18,-680.00, together with all water and sewer rents, insurance and taxes on the property. To the latter items we cannot fix a precise value, but it is obviously a substantial figure over the lease term. Recognizing the totality of the parties' dealings, we find that the real consideration received by the Marcuses is a benefit of $35,000.00, *less* at least $18,680.00, *less* an unspecified sum for property taxes, utilities, and insurance. In no way can the resultant figure equate with the established fair market value of $39,-000.00, and be considered fair consideration.[7] Thus we find the conveyance to be fraudulent in violation of the Act, particularly section "4".

■■ We also find a violation of section "7" of the Act. As aforesaid, "actual intent" must be found as an element before section "7" of the Act applies. Such intent may be established by circumstantial evidence. *Iscovitz v. Filderman,* 334 Pa. 585, 6 A.2d 270 (1939). There is much testimony that the Marcuses intended to move out of Pennsylvania, and that the Halvorsens who live out of the State contemplated a move to Pennsylvania; these plans were stated as the reason for the real estate transaction. However, no such moves occurred and in view of the already weakened financial condition of the Marcuses, the Chancellor chose to disbelieve the proffered *"raison d'etre"* for the transaction. This de-

---

7. We differ with the lower court's "opinion" on this point. But our finding as to lack of fair consideration does not contradict any finding of fact or conclusion of law. Indeed we are at a loss to explain why the "opinion", admittedly not a document fixing facts or drawing legal conclusions, states there was fair consideration. The adjudication and Decree Nisi determined otherwise to the contrary.

termination, a part of the adjudication, is amply supported by the evidence. We too are not, on the testimony, able to accept the alleged coalescence of the transaction, both deed and lease, with the intended but never completed moves, for one has no bearing on the other. Residence outside Pennsylvania, or the possibility thereof, is no reason for an insolvent to put his assets out of the reach of Pennsylvania creditors. The lower court is correct in finding actual fraudulent intent and a violation of section "7".

Appellants secondly argue that appellee did not act with due care in preserving collateral and that the lower court erred in finding to the contrary. Factually it appears that appellee demanded additional collateral for the loan and received 25,000 shares of common stock of Information Interscience, Inc. Appellants argue that the bank did not act quickly to sell the collateral in the face of the company's imminent and known demise. Testimony on behalf of appellee, believed by the Chancellor to be the reason for lack of a sale prior to the stock's becoming worthless, shows that the stock in the hands of its former pledgor need not and had not been registered, but that if the bank were to sell the stock, it would have to register as an underwriter. Appellants offered testimony that the stock could have been sold privately. But the Chancellor found no basis in the testimony to conclude that appellees were negligent with regard to the stock and was not disposed to find any requirement that appellee should have acted in the way suggested at trial by appellants. The testimony supports the Chancellor's conclusion that appellee had acted in a reasonably prudent way.

Decree affirmed.