## Lafayette Manor, Inc. v. Carroll

140

*Mary Warman Terry,* for plaintiff.
*Lynne N. Crenney,* for defendant.

FRANKS, *J.,* May 23, 1979—Plaintiff, Lafayette Manor, Inc., requests this court to set aside a conveyance of a parcel of real estate by one Ella Price, a resident at this facility of plaintiff, to defendant, Wilber S. Carroll, Jr., as being fraudulent and void under the provisions of the Uniform Fraudulent Conveyance Act of May 21, 1921, P.L. 1045, sec. 1 et seq., 39 P.S. §351 et seq., and for other applicable relief. This case is before the court upon stipulation of counsel that it be submitted to the court for determination upon stipulated facts, the pleadings, pre-trial conference and adjudication, and briefs.

## FINDINGS OF FACT

The stipulated facts, which we accept as our findings of fact, are as follows:

"The plaintiff, Lafayette Manor, Inc., a Pennsylvania non-profit corporation, has continued to provide the housing, care and treatment of Ella Price, from September 15, 1976, her date of admission, to

the present time. The residents of Lafayette Manor, Inc., are expected to pay for their continuing housing, care and treatment, and medical expenses as such charges accrue, and it is the responsibility of each resident to make arrangements for payment. Such expenses and charges consist of a basic per diem rate and additional charges for medical treatment, drugs or other special treatment. Each resident, if competent, or a relative on the resident's behalf if the resident is incompetent, is advised of the requirement for payment at the time of admission. In Ella Price's case, someone on her behalf arranged for payment to be made through the Department of Public Welfare, in the form of Medicaid payments. However, no payments have been made, by Medicaid or otherwise, since shortly before September 2, 1977.

"On September 2, 1977, Ella Price granted and conveyed to the defendant, Wilber S. Carroll, Jr., certain real estate situate in the City of Uniontown, Fayette County, Pennsylvania, for an inadequate consideration. The defendant executed and filed a real estate transfer tax affidavit of value for said conveyance in which he set the full consideration as $1.00 and alleged that the fair market value of the property was $10,000. The actual value of the real estate has not been established, but it is believed to exceed $10,000.

"On September 2, 1977, and since that date, Ella Price was, and has continued to be, liable to the plaintiff, Lafayette Manor, Inc., for her continuing housing, care, treatment and medical expenses, as such charges accrued. In addition to her real estate, Ella Price also possessed on September 2, 1977, household furnishings, approximately $1,500 in cash, and received a monthly pension benefit of

approximately $62. Medicaid paid all of her expenses at Lafayette Manor, Inc., except $62 per month. Medicaid thereafter terminated the payments to Lafayette Manor, Inc., retroactively as of September 2, 1977. No payments have been received from Ella Price or on her behalf for her stay at plaintiff's institution since then. At the time of the filing of the complaint in this action, Ella Price was liable to plaintiff in an approximate amount of $4,000."

## ISSUES

The stipulated legal issues are:

1. Whether the court in considering the liability of Ella Price, grantor, can consider only accrued charges as of the date of the conveyance or may future liability be considered in determining insolvency.

2. Whether in determining the assets of Ella Price, grantor, on the date of the conveyance the court can consider a possible action for reinstatement of terminated Medicaid payments as an asset.

## DISCUSSION

Plaintiff is entitled to equitable relief only if Ella Price by reason of making the conveyance of her real estate to her grandson, defendant herein, was rendered insolvent as to a creditor within the meaning, interpretation and intent of the Uniform Fraudulent Conveyance Act of May 21, 1921, P.L. 1045, sec. 1 et seq., 39 P.S. §351 et seq. We determine that she was rendered insolvent, and that plaintiff as a creditor of hers is entitled to relief.

Section 4 of the act provides: "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent, is

fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration."

There appears to be no argument but that the only material matters for this court to determine are whether in considering the facts in their entirety, Ella Price was, or would be rendered, insolvent at the time she conveyed the real estate to her grandson, and whether plaintiff was actually a creditor at that time. It is conceded by the parties that fair consideration was not paid for the conveyance but that there was no actual intent to perpetrate a fraud.

Our first inquiry in analyzing this situation directs us to the definitions of certain terms under the act. According to section 1 of the act, a "creditor" is "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent." A "debt" is defined by the same section as "any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent." Under section 2 of the act, one "is insolvent when the present, fair, salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." Accord: Continental Bank v. Marcus, 242 Pa. Superior Ct. 371, 376, 363 A. 2d 1318 (1976).

The Pennsylvania Supreme Court has adopted two interpretations for insolvency. One meaning is the purely mathematical one which arises when a debtor's assets are less than his liabilities. "The equity definition of insolvency conceives of it as a status or condition to be differentiated from mere symptomatic occurrences such as chronic defaults in current payments." Larrimer v. Feeney, 411 Pa. 604, 608, 192 A. 2d 351 (1963). In other words, to

determine insolvency in the equity context, we must analyze the general overall picture of the grantor at the time of the conveyance: Angier v. Worrell, 346 Pa. 450, 31 A. 2d 87 (1943).

With the aforementioned as guidelines, we see, in the case at bar, a resident of plaintiff's facility who at the time of the conveyance at issue had been there for over a year, and the outlook was that she would continue to reside there into the indefinite future, possibly until her death. At the time of her admission she was informed that as a resident of Lafayette Manor, Inc., she would be expected to pay for her daily care, treatment and medical expenses, as the charges accrued. Ella Price, on the date of the conveyance of her real estate to defendant and while a resident of plaintiff, possessed household furnishings, approximately $1,500 in cash and a monthly pension income of approximately $62 per month. However, the great majority of her assets consisted of her real estate, the value of which was probably in excess of ten times the value of her personal property. With the likelihood of her indebtedness to plaintiff continuing into the future, it is certainly a reasonable interpretation of section 4 of the act that it should apply to the facts of this case. Where one conveys the overwhelming bulk of her estate without fair consideration and apparently solely as a gift to a relative in spite of mounting daily personal obligations, for all practical purposes she is rendered insolvent within the equity definition of insolvency. Ella Price's status or condition was indeed rendered such that accruing charges for her continuing personal life needs could not be paid with the modicum of assets she still had after her conveyance.

As a matter of fact, this financial result did occur as shown by the balance of approximately $4,000

still owing plaintiff at the time the complaint in this action was filed. And why should not the assets of Ella Price under the posture of these facts have been utilized for the payment of her fair, just and true charges incurred for her benefit? We conclude that the placing of a substantial portion of Ella Price's assets out of the reach of plaintiff at a time when she was continuing to receive the benefits from plaintiff was inequitable and totally unfair.

Our view of the entire Uniform Fraudulent Conveyance Act leads us to the conclusion that where an individual is continuing to incur liability and although such liability is contingent, it is reasonably certain to continue, and that individual without fair consideration gives away a substantial portion of her assets, that her inability to pay her creditors or continuing obligations renders that individual insolvent within the intent, purpose and meaning of the act.

We further find that plaintiff was a creditor of Ella Price at the time of the questioned conveyance. Although the case of Baker v. Geist, 457 Pa. 73, 321 A. 2d 634 (1974), cited by both counsel, is somewhat different in factual setting from the case at bar, the holding in that case lends support to our holding that Ella Price was a debtor of Lafayette Manor, Inc. In Baker the liability of defendant involved in an automobile accident with plaintiff was not yet determined by a verdict through trial; however, defendant was made aware that plaintiff's damages exceeded insurance coverage. Our Supreme Court, at page 77, in defining the word "debt" and reiterating the language of the act stated that debt was "'any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent.'" Just as our Supreme Court decided that there was a claim or debt

even before the action was filed in Baker, it logically follows in the instant case, that Ella Price would after September 2, 1977, continue to have legal obligations with plaintiff for her further care as these could be reasonably foreseen. Therefore, at the time of the conveyance to defendant herein, Ella Price was a debtor of plaintiff.

Finally, defendant contends that Medicaid unlawfully terminated the payments to plaintiff on behalf of Ella Price from September 2, 1977, and that the money owed to Ella Price because of this alleged unlawful termination was an asset of Ella Price at the time of the conveyance making her solvent. We do not agree that any possible legal claim or possible recovery from Medicaid should be considered an asset at the time of the conveyance in 1977. Section 2 of the act states that assets to be considered are those which have a "'present, fair, salable value.'" Baker v. Geist, supra, at page 78. At best, the claim would have been a "possibility" on September 2, 1977. Besides, this court does not have sufficient facts before it to determine the likelihood of recovery in any such possible action.

Hence, the court is satisfied that the conveyance in ths case was in violation of the intent, purpose and meaning of the Uniform Fruadulent Conveyance Act, and the conveyance must be set aside.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties and the subject matter.

2. The Uniform Fraudulent Conveyance Act of May 21, 1921, P.L. 1045, sec. 1 et seq., 39 P.S. §351 et seq., is the controlling law in this case.

3. Plaintiff, Lafayette Manor, Inc., was a creditor of Ella Price, grantor, on the date of the subject conveyance on September 2, 1977.

4. The subject conveyance by Ella Price to Wilber S. Carroll, Jr., defendant herein, was without adequate consideration.

5. The subject conveyance by Ella Price to Wilber S. Carroll, Jr., rendered her insolvent at the time of the conveyance.

6. The subject conveyance by Ella Price to the within defendant was within the prohibition of the Uniform Fraudulent Conveyance Act and, therefore, null and void.

## DECREE NISI

And now, May 23, 1979, after consideration, it is ordered, decreed and adjudged that:

1. The conveyance by Ella Price, widow, to Wilber S. Carroll, Jr., by deed dated September 2, 1977, and of record in the Recorder's Office, Fayette County, Pa., in Deed Book Volume 1223, page 19, granting and conveying Lot No. 13 and Lot No. 14 in the plan of lots laid out by Joseph Wolfe, a plot of which is recorded in said Recorder's Office in Plan Book Volume 1, on page 91, and situate in the City of Uniontown, is set aside as being fraudulent, and null and void.

2. Harry L. Williams, Recorder of Deeds of Fayette County, is directed to note upon the margin of the deed book where said deed is recorded the fact that the aforesaid deed is null and void and of no effect.

3. That the subject real estate shall not be encumbered or sold without first obtaining approval of court.

4. Costs of this action shall be equally divided between the parties.

The prothonotary is directed to enter this decree nisi and give notice thereof to all parties of record,

or their counsel, and to Harry L. Williams, Recorder of Deeds. If no exceptions are filed thereto within ten days after notice of this decree, a final decree shall be entered as of course by the prothonotary.