## Mihalek v. Coal Technology Corporation

*Patrick C. O'Donnell,* for plaintiff.
*Jay Fischer,* for defendant Coal Technology Corp.
*Joseph F. Claffy,* for The Pennsylvania Companies Inc.

GAWTHROP, *J.,* March 31, 1987 — This case involves two creditors who have asserted competing claims in the property of one debtor corporation, between which we must determine the priority. The business entities involved are Charles C. Mihalek, P.S.C., plaintiff-claimant, a Kentucky professional service corporation; Coal Technology Corporation, defendant debtor, a Delaware corporation which, after originally doing business in Kentucky, moved its operations to Chester County, Pa.; and The Pennsylvania Companies Inc., a Pennsylvania corporation, and also a claimant.

### FACTS

Mihalek's claim against Coal Technology is based upon an obligation Coal Technology incurred when Charles Mihalek, of Mihalek, served as secretary

and counsel for Coal Technology when Coal Technology was based in Lexington, Kent. The details of this obligation were fully addressed by the Fayette Circuit Court in Kentucky where Mihalek obtained a judgment against Coal Technology in the amount of $48,872.33, plus interest.

Mihalek initiated the Kentucky action on January 25, 1985, and obtained a judgment on January 17, 1986. Under Kentucky law, the creditor must hold a newly issued judgment for 10 days before he can move the judgment for enforcement outside that state. Mihalek's judgment was certified for foreign execution on January 28, 1986, and on January 29, 1986, Mihalek executed against Coal Technology by means of a sherriff's levy on all property located in the Coal Technology offices at 341 East Lancaster Ave., Downingtown, Pa. In response to interrogatories posed to local banks, Mihalek discovered that Coal Technology held $10,210.87 in a deposit account in the Downingtown National Bank,[1] and took judgment against that bank.

The Pennsylvania Companies' claim against Coal Technology is premised upon two promissory notes and a security interest, which evidence a $120,366.65 debt purportedly owed it by Coal Technology.[2] The Pennsylvania Companies' asserted status as a secured creditor of Coal Technology stems from its January 22, 1986, confession of judgment on the promissory notes, as well as compliance with

---

1. The Downingtown National Bank, once garnished by Coal Technology, brought The Pennsylvania Companies into this action through a petition for interpleader. Downingtown National Bank has requested a determination as to which of these creditors it should turn over the deposited funds; it also asks us whether to deduct from that payment its costs in seeking this determination.

2. Principal: $104,666.65; attorneys' fees: $15,399.99.

the filing procedures necessary to perfect its security interest, which was completed on January 27, 1986.

The collateral against which these creditors assert their claims comprises certain office and research equipment, located at the Downingtown, Pa., offices of Coal Technology, as well as the contents of the deposit account in the Downingtown National Bank.

## ISSUES

There are two issues in this case. The first is whether The Pennsylvania Companies holds a valid, enforceable security interest in the property of Coal Technology. The second issue involves a determination of priority as between The Pennsylvania Companies and Mihalek, as creditors, each claiming an interest in the assets of Coal Technology, superior to that claimed by the other.

Two factual elements of this case, while vital to the ultimate determination of the above issues, are not at issue. There is no dispute as to whether Coal Technology is indebted to Mihalek, that question having been fully probed in the Kentucky courts, or as to whether creditor Mihalek has rights in the property of Coal Technology.[3] The second point not at issue here is that this is a winner-take-all decision. The Pennsylvania Companies argues that the

---

3. Mihalek transferred its Kentucky-issued judgment to Chester County, Pa., in compliance with the Uniform Enforcement of Foreign Judgment Act, 42 Pa.C.S. §4306. By properly filing and executing that transferred judgment in this county, Mihalek acquired the status of a "lien creditor" under the Pennsylvania Commercial Code, 13 Pa.C.S. §9301(c); by virtue of this lien, Mihalek established its interest in the assets of Coal Technology.

prior creditor, once determined, will merely delay
the junior creditor's ultimate satisfaction of the
obligations owed it by Coal Technology while the
prior creditor first extracts what is owed it from the
pile of assets which is Coal Technology. The record
clearly reflects, however, that the total assets of Coal
Technology do not exceed approximately $30,000.[4]

## DISCUSSION

*The Validity of The Pennsylvania Companies' Security Interest*

The creation of a security interest, which is held
by the creditor in the property of the debtor, and the
enforcement of such an interest, is governed by Article 9 of the Uniform Commercial Code, adopted in
Pennsylvania as Division 9 of what we shall refer to
here as the code. 13 Pa.C.S. §9101 et seq. Under
the code, a creditor who files all of the requisite papers with the appropriate local and commonwealth
offices has achieved what the code describes as the
provision of "simple notice," which indicates "merely that the secured party who has filed may have a
security interest in the collateral described." Section
9402 comment 2. The code, however, is more than a
mechanical handbook of what, when and where to
file papers. Its underlying purpose is to establish
uniform procedures by which a creditor can determine whether certain of a debtor's property is
encumbered, thereby ultimately preventing
duplicative claims among creditors to the identical
property, and, should conflicting claims arise, it establishes a priority structure to enable superior

4. Frank Scardino, president of The Pennsylvania Companies and chairman of Coal Technology, testified that the value
of the property held by Coal Technology, excluding the
$10,285.87 deposited in the Downingtown National bank, did
not, in his estimate, exceed $20,000.

creditors to stand first in line for distribution of the debtor's collateral. Sections 9101, comment; 9312, comments 1 and 4; 9402, comment 2. Here, The Pennsylvania Companies filed all the right forms in all the right places and therefore, has given notice that it may have a security interest in the property of Coal Technology. Creditor compliance with the drafting, signing and filing procedures is but the starting point of inquiry as to the validity of a security interest rather than an ironclad guarantee of priority over later-perfected or unperfected security interest holders.

Mihalek acknowledges that, by complying with the filing provisions of the code, The Pennsylvania Companies has put it on notice that Coal Technology's property may be encumbered. Mihalek asks that we examine the nature of this secured status more carefully, arguing that the grant of such status by Coal Technology to The Pennsylvania Companies constitutes a fraudulent conveyance under the Uniform Fraudulent Conveyance Act, [5] and should therefore be set aside.

The threshold question in reviewing these transactions under the Uniform Fraudulent Conveyance Act is whether the grant of a security interest or the execution of a promissory note constitute a conveyance as that term is used in the act.

Section 351 defines conveyance so as to include "every payment of money, assignment, release, transfer, lease, mortgage, or pledge of tangible or intangible property, and also the creation of any lien or encumbrance." The grant of a security interest is a conditional pledge in that, if the precedent condi-

---

5. Act of May 21, 1921, P.L. 1045, §1, 39 P.S. §351 et seq.

tion of default arises, the secured party is entitled to seize or liquidate the pledged property and retain the property or proceeds as if the debtor had given or sold the collateral to the secured party. Similarly, with the execution of a promissory note, the maker is analogous to the debtor who grants his creditor a security interest. The maker, while promising to repay a debt, also provides his creditor with certain rights in his property, should he default. The grant of a security interest and the execution of a promissory note also fall within the lien-encumbrance portion of the definition of conveyance because the occurrence of the condition triggering the creditor's rights, usually the debtor's default, entitles the creditor to begin legal proceedings against the debtor's property, culminating in a judgment against the debtor's property. For these reasons, we conclude that the grant of a security interest, combined with the execution of a promissory note by Coal Technology in favor of The Pennsylvania Companies constituted a conveyance such as to bring the overall security-providing transaction within the scope of the Uniform Fraudulent Conveyance Act.

*Violation of the Uniform Fraudulent Conveyance Act: Actual Intent to Hinder, Delay or Defraud*

Under section 357 of the Uniform Fraudulent Conveyance Act, a debtor who conveys property with actual intent to "hinder, delay or defraud" creditors undertakes a fraudulent conveyance. Where a debtor dissipates its assets, rendering them unavailable to satisfy the claims of creditors, the transaction by which the assets were dissipated is prima facie fraudulent under section 357. *Temtex Products Inc. v. Kramer,* 330 Pa. Super. 183, 479 A.2d 500 (1984). To determine whether such a dis-

sipation occurred here, we must examine the transactions underlying the creation of The Pennsylvania Companies' secured status with respect to the property of Coal Technology. In reviewing an allegation of intent to defraud creditors, we must consider the entire fabric of the transactions involved, *Continental Bank v. Marcus*, 242 Pa. Super. 371, 363 A.2d 1318 (1976), and look at the "general, overall picture of the grantor at the time of the conveyance," *Lafayette Manor Inc. v. Carroll*, 12 D.&C.3d 139, 144 (1979) citing *Angier v. Worrell*, 346 Pa. 450, 31 A.2d 87 (1943). This picture may be drawn in part by circumstantial evidence. *Iscovitz v. Filderman*, 334 Pa. 585, 6 A.2d 270 (1939).

During his several depositions in this matter, Mr. Scardino testified first in his capacity as chief executive officer of Coal Technology, and later, as president of The Pennsylvania Companies. Reading from these depositions, we glean several salient facts. The Pennsylvania Companies became involved with Coal Technology when Mr. Scardino was hired as a consultant to help Coal Technology resolve its financial problems. In 1984, the board of Coal Technology approved an employment contract under which Mr. Scardino would serve as chief executive officer and Coal Technology would pay $100,000 per year to The Pennsylvania Companies. In 1985, however, Coal Technology experienced even more acute financial difficulties and was unable to pay The Pennsylvania Companies for Mr. Scardino's services. Mr. Scardino testified that, in an effort to alleviate these financial difficulties, The Pennsylvania Companies made several loans to Coal Technology. When questioned about two such loans, in the amount of $50,000 and $25,000, Mr. Scardino testified that he did not know the exact dates of the

transfers and that he was uncertain as to whether the loans were conducted by cash or wire transfer.

On January 10, 1986, the Coal Technology board approved a request by Mr. Scardino that it secure the fees and loans outstanding to The Pennsylvania Companies. Neither the minutes of that meeting nor the details of the resolution have been made a part of this record. On January 15, 1986, Mr. Scardino, as chairman of the Coal Technology board, and Mr. Claffy, as secretary of Coal Technology, executed a 'Demand Grid Promissory Note,' a general purpose note designed to bind the debtor to a promise to repay an infinitely adjustable amount of borrowed money. On January 15, 1986, at the moment of execution, the adjustable portion of this instrument reflected an unpaid balance of $104,666.65. On January 16, 1986, Coal Technology, again represented by Mr. Scardino and Mr. Claffy, executed a second promissory note for the benefit of The Pennsylvania Companies, this time in the principal amount of $104,166.67. Both notes included provisions under which The Pennsylvania Companies could, at its option, unconditionally institute collection procedures against Coal Technology. On January 15, 1986, The Pennsylvania Companies exercised these collection rights and on January 22, 1986, obtained judgment against Coal Technology in the amount of $120,366.65. Also on January 15, 1986, Coal Technology, again by the hand of Mr. Scardino, signing this time as the debtor corporation's president, executed a security agreement granting a security interest in certain described collateral to The Pennsylvania Companies. Financing statements signed by Mr. Claffy, secretary of Coal Technology, were filed with the prothonotary of Chester County on January 22, 1986, and with the secretary of the commonwealth on January

27, 1986.

We look also to the close ties between these two corporations. Mr. Scardino's dual capacity as chief officer of both Coal Technology and The Pennsylvania Companies permitted him personally to oversee their operations and respond in periods of financial crisis. For example, when money was needed to infuse Coal Technology's sagging operations, it came from The Pennsylvania Companies. The accounting records and testimony reflect that these were informal transfers, logged on the books only when payments became due; if these were loans, they were not secured or evidenced by promissory notes at the time they were made. Further, when consulting fees or loan repayments became due, they were forgiven by The Pennsylvania Companies without formally establishing the obligations as secured deferred debt. Presumably, Mr. Scardino exercised sound business judgment in so intertwining the affairs of these two companies, but one aspect of this method of corporate management has generated some long-term problems, specifically, that The Pennsylvania Companies did not maintain accurate, complete and timely records of its dealing with Coal Technology. It appears that The Pennsylvania Companies felt secure, in an informal, noncode application of that word, that the monies it loaned to, or delayed in collecting from, Coal Technology could always be retrieved.[6]

---

6. To insure such retrieval, Mr. Scardino apparently relied on his personal involvement with his business interests and, rather than protect those interests from third-party creditors by implementing available security devices, he applied self-help. One such instance is reflected in note 2 to the Financial Statements of Coal Technology complied by Arena & Company CPA, on July 18, 1984:

"Due to the actions of various creditors of the company [Coal Technology] attempting to file liens against company

The words "hinder," "delay" and "defraud" are not expressly defined in the Uniform Fraudulent Conveyance Act. Mr. Justice Cardozo, writing for the United States Supreme Court, addressed the application of 39 P.S. §357 to the mechanism employed by a debtor to keep his creditors at bay while he continued to operate his business. *Shapiro v. Wilgus*, 287 U.S. 348, 53 S. Ct. 142, 77 L. Ed. 355 (1932). There, the debtor, an individual, believed that if he were given sufficient time he could eventually satisfy all of his obligations. While most of his creditors assented to this plan, two threatened to bring suit to collect on their debts. To avoid these creditors, over a period of three days, the debtor established a Delaware corporation, conveyed all of his business property to that corporation, and made application to place the corporation, which had also assumed his business liabilities, in receivership. In this way, the debtor was technically legally able to create the protection from creditors, in the form of time, which he needed to return his business to solvency. This scheme was challenged, however, when one of the two nonconsenting creditors asserted a section 357 argument that the debtor's intention in creating the protective device was to hinder and delay his creditor's efforts to collect the debts he owed them. Mr. Justice Cardozo, in de-

---

bank accounts, management felt it was necessary to hold funds in a manner that would be safe from such actions. Consequently, during the months of January through March 1984, $450,000 of proceeds from sale of previously unissued common stock of the company was temporarily held by the chief executive officer [Mr. Scardino] on behalf of the company. Periodically, as the company required these funds for operations, the funds were transferred into the company's bank account."

scribing the debtor's efforts as fraudulent, noted that the component steps "evidenced the unity of a common plan, each stage of the transaction drawing color and significance from the quality of the other." 287 U.S. at 353, 53 S. Ct. at 144. The court held that a conveyance is illegal if made with an intent to hinder and delay creditors, and further, that a debtor, even if he truly believes he will eventually pay his debts in full, is never clothed with a privilege to build up obstructions that will prevent creditors from reaching his property in satisfaction of his debt. 287 U.S. at 353, 53 S. Ct. at 144. We find that this interpretation of section 357 still controls and is therefore applicable to the instant case.

Just as the *Shapiro* court refused to permit the debtor's use of a legal device — a corporation and a judicially appointed receiver — to provide a protective cover for a fraudulent design, we shall not permit The Pennsylvania Companies to channel all of the assets of Coal Technology to itself under the guise of technical compliance with the confession of judgment rules and the Uniform Commerical Code. We conclude that these obstructions were built up through the collusive execution of documents and agreements by Coal Technology and The Pennsylvania Companies with the intent to delay and hinder Mihalek, thus permitting The Pennsylvania Companies to execute against what remains of the property of Coal Technology.

Upon application of the standards of the Uniform Fraudulent Conveyance Act, and, consistent with authority interpreting that act, examination of the entire fabric of the transactions between Coal Technology and The Pennsylvania Companies, we find clear and convincing evidence that Coal Technology authorized the effective transfer of all its property to The Pennsylvania Companies, thereby cutting

off all hope that Mihalek might collect the debt owed it by Coal Technology.

Further, we find that The Pennsylvania Companies and Coal Technology undertook these transfers when the management of both companies was fully aware that Coal Technology had outstanding obligations to Mihalek and that Mihalek was attempting to obtain a judgment to recover the money owed it by Coal Technology. We therefore hold that this conduct by Coal Technology and The Pennsylvania Companies was fraudulent, as to Mihalek, under section 357 of the Uniform Fraudulent Conveyance Act. As such, the transfers constituting the grant of a security interest in Coal Technology to be held by The Pennsylvania Companies, in the form of either the perfected security interest or the promissory notes, are set aside under section 359(1)(a) of the act.[7] The effect which the setting aside of these transfers has upon the resolution of the priority issue will be addressed in the next section.

## The Priority as Between The Pennsylvania Companies and Mihalek

The first step in determining the priority as between two creditors asserting conflicting interests in the property of one debtor is to identify the interest held by each of the creditors. Once the secured

---

7. 39 P.S. §359(1)(a):

"Rights of creditors whose claims have matured

"(1) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser:

"(a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim . . . ."

status of The Pennsylvania Companies in the property of Coal Technology is set aside, The Pennsylvania Companies is left with an unperfected security interest in that property. Such an interest represents a claim to the assets of Coal Technology which is not backed by an enforceable right actually to take possession of those assets. Mihalek's interest in the same Coal Technology assets is that of a lien creditor.[8]

Returning to the provisions of the Pennsylvania Commerical Code, §9301(a)(2) states that an unperfected security interest is subordinate to the rights of a person who becomes a lien creditor before the security interest is perfected. As discussed above, The Pennsylvania Companies went through all of the technical steps required to perfect its security interest in Coal Technology, but such technical compliance serves primarily as a notice function, alerting other interested persons that a debtor's property might be encumbered. Mihalek successfully argued that the creation of The Pennsylvania Companies' security interest was the product of fraudulent intent on the part of top management of both Coal Technology and The Pennsylvania Companies to protect Coal Technology assets from other creditors and to make those assets solely available to The Pennsylvania Companies. Such fraudulent intent voids the perfected security interest which, of course, has not since been perfected. The resolution of the priority issue, therefore, is that lien creditor Mihalek has priority over The Pennsylvania Companies and is entitled to satisfy fully the obligation owed it by Coal Technology from the assets of that corporation.

---

8. See footnote 3, supra.

## CONCLUSION

In resolving the matter placed before us by these parties, we have addressed two central issues. First, we determined whether The Pennsylvania Companies held a valid, enforceable security interest in the property of Coal Technology, and second, which creditor, as between The Pennsylvania Companies and Coal Technology, held the superior interest in that property. Having concluded that The Pennsylvania Companies holds an unperfected security interest while Mihalek is lien creditor, we make the following

## ORDER

And now, this March 31, 1987, upon consideration of the pleadings, evidence, argument and briefs of counsel, it is hereby ordered and decreed that:

(1) The petition of The Pennsylvania Companies to set aside Mihalek's levy is dismissed and the rule discharged.

(2) The judgment in favor of The Pennsylvania Companies and against Coal Technology, filed at no. 86-00509, confession of judgment upon the promissory notes executed by Coal Technology in favor of The Pennsylvania Companies, is set aside.

(3) The security agreement executed by Coal Technology in favor of The Pennsylvania Companies on January 15, 1986, and the financing statements evidencing that agreement filed with the Chester County prothonotary on January 22, 1986, and the secretary of the commonwealth on January 27, 1986, are set aside.

(4) The objections filed by The Pennsylvania Companies to the sheriff's determination of property

claim are overruled and the sheriff's determination of property claim is affirmed.

(5) The sheriff is directed to proceed to expose the property of Coal Technology, subject to Mihalek's levy, located at 341 East Lancaster Ave., Downingtown, Chester County, Pa., to sale.[9]

---

9. Our reading of the depositions in this matter reveals that some question exists as to what specific property in the Coal Technology office at 341 Lancaster Ave., Downingtown, Pa., is subject to Mihalek's levy. Both The Pennsylvania Companies and Mr. Scardino filed property claims with the sheriff, asserting interest in the property of Coal Technology levied upon by Mihalek. The sheriff heard these claims on April 9, 1986, and in his determination dated April 11, 1986, found both claims to be valid. The following property was determined by the sheriff to be owned by The Pennsylvania Companies and therefore not subject to Mihalek's levy: two tan four-drawer file cabinets, one black two-drawer file cabinet, and one graphic (total value: $200). With respect to Mr. Scardino, the sheriff found the following items to be owned by him and therefore not subject to Mihalek's levy: family photographs, two humidors, assorted lighters, an appointment book, a radio car, a letter opener-scissor set, a Rolodex, various ashtrays, a metal sculpture, and a quantity of personal items in and on the desk and credenza (total value: $85). These were the only items exempted from Mihalek's levy by the sheriff. The following items of Coal Technology property, set forth here as they are described in the document filed in the sheriff's office, are and have been since January 30, 1986, subject to Mihalek's levy: "typewriter, Xerox, IBM Selectric II, adding machines, Texas Instruments/Unitrex, Classic 50, office desks and chairs/file cabinet, sofa and chairs, tables, Panasonic FP-3010R copier, computer, IBM Personal/Okidata, Microline 93/IBM Printer, portable radio."

During the July 11, 1986, deposition, Mr. Scardino testified that there was no Coal Technology property at the 341 Lancaster Ave. office because, by operation of the UCC-1 financing statements filed for him by Mr. Claffy, he was entitled to "take possession" of the property. We take this opportunity to identify in detail the property subject to our order in order to aviod conflict with regard to carrying out the provisions of the order. The effect of our setting aside the judgment and se-

(6) The interpleader filed by garnishee Downingtown National Bank is dismissed and the judgment in favor of Mihalek and against Downingtown National Bank is affirmed.

(7) The Downingtown National Bank is directed to release the contents of checking account no. 122-748-7, an amount to be not less than $10,285.87, along with any interest which the owner of such an account would be entitled to on that amount from January 29, 1986, until the date of this order. The request of Downingtown National Bank that it be permitted to reduce the amount which it is ordered to release to Mihalek by its costs and fees is denied.

---

cured status of The Pennsylvania Companies is once again to vest ownership of the property subject to the levy in Coal Technology, thereby making it available for execution by Mihalek.