**COLE ENERGY DEVELOPMENT COMPANY, Plaintiff–Appellant,**

v.

**INGERSOLL–RAND COMPANY, Defendant–Appellee.**

No. 92–3944.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1993.

Decided Nov. 1, 1993.

Harold M. Olsen, Olsen & Olsen, Springfield, IL (argued), for plaintiff-appellant.

Michael J. Roberts (argued), Ralph M. Reisinger, Michael T. Small, Grand Rapids, MI, for defendant-appellee.

Before POSNER, Chief Judge, CUMMINGS, Circuit Judge, and ZAGEL, District Judge.*

POSNER, Chief Judge.

This diversity breach of contract suit is before us for the second time; this time the question is whether the district judge disobeyed the directions in our first decision (reported at 913 F.2d 1194 (7th Cir.1990)), which remanded for a trial on damages. The plaintiff, Cole, a producer of natural gas, had leased gas compressors from the defendant, Ingersoll–Rand, to increase Cole's production of gas. According to Cole, the compressors failed to operate as warranted. A bench trial on liability consumed nine days, at the end of which the judge ruled that Ingersoll–Rand had breached its warranty to Cole. But rather than enter findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a), the judge told the parties to try to settle the damages phase of the case and, failing that, to submit their damages proofs by way of affidavit. Settlement negotiations did fail, the parties submitted the required affidavits, and the judge awarded $17,000 (in round numbers) in damages. Cole appealed, and a different panel of this court reversed, concluding that the district judge had "erred in denying the parties a trial on damages and in calculating the amount of the damages to be awarded to Cole." 913 F.2d at 1196. In a portion of the opinion introduced by the soothing sentence "Some comments on the damage determination may be useful to the [district] court and to the parties," *id.* at 1201, the panel identified a number of errors in the district judge's calculation of Cole's damages. Cole had claimed two types of damages. The first was the additional expense (payroll and the like) that Cole had incurred because the failure of the compressors to perform as warranted caused delays in the production of natural gas from Cole's field. Besides these "incidental damages" (basically the out-of-pocket expenses occasioned by the breach), Cole claimed a diminution in profit as a result of the delays— "consequential damages" (all other losses

* Hon. James B. Zagel of the Northern District of Illinois, sitting by designation.

caused by the breach). See UCC § 2–715, held applicable to leases, by analogy, in *Walter E. Heller & Co. v. Convalescent Home*, 49 Ill.App.3d 213, 8 Ill.Dec. 823, 827, 365 N.E.2d 1285, 1289 (1977), and *Dillman & Associates, Inc. v. Capitol Leasing Co.*, 110 Ill.App.3d 335, 66 Ill.Dec. 39, 44, 442 N.E.2d 311, 316 (1982). The judge had cut down Cole's incidental damages by 75 percent on the ground that Cole was only a 25 percent owner of the gas field, but the panel held that as the sole lessee Cole was entitled to 100 percent of any damages awarded. The judge had rejected Cole's claim for consequential damages in its entirety on the ground that the plaintiff was seeking prejudgment interest on a nonliquidated claim. Not so, the panel ruled. A profit delayed is, because of the time value of money, a profit diminished, and the diminution is itself a lost profit, not prejudgment interest. Among other errors noted by the panel, the judge had ignored Cole's claim to the return of the payments that it had made under the lease, plus interest; the breach of warranty entitled it to rescind the lease and recover the payments. The opinion ends: "The case is Reversed and Remanded for the entry of written findings on the liability phase and for trial on the damages phase." 913 F.2d at 1204.

On remand, Judge Mills made written findings on liability, but did not conduct a trial on damages. Instead he asked the parties to submit their proof of damages and on the basis of those submissions he recalculated Cole's net damages as—zero. Gone were the incidental damages, almost $70,000 in the judge's original damages ruling before he applied the 75 percent discount. Instead, the judge assessed consequential damages of $31,000—but then cut that figure, too, down by 75 percent because Cole was only a 25 percent owner of the gas field. He then offset against the resulting damages figure a larger amount in lease payments due and unpaid before Cole had notified Ingersoll-Rand that it was canceling the lease. Judge Mills's opinion contains no discussion of this court's opinion and no explanation of why he failed to conduct a trial on damages as he had been told to do and to correct the errors that this court had identified. Again Cole's request for the restitution of its lease payments was ignored.

The least controversial aspect of the law of the case doctrine requires a lower court judge to comply with the rulings made by higher courts in the same case. *Sibbald v. United States*, 37 U.S. (12 Pet.) 488, 492, 9 L.Ed. 1167 (1838); *Johnson v. Burken*, 930 F.2d 1202, 1207 (7th Cir.1991). The good sense of this requirement is obvious: without it, appellate review would be ineffectual. But the law of the case doctrine is not rigid even in this its most elementary application. If it is apparent that the higher court has committed a serious and demonstrable error, factual or legal—for example, the higher court might have based its decision entirely on a case that has since been overruled—in circumstances where correction by filing a petition for rehearing in the higher court would not have been feasible (the overruling might have occurred after the case was remanded), the lower court can correct it on remand. *Vieux Carre Property Owners v. Brown*, 948 F.2d 1436, 1442–43 (5th Cir. 1991); *United States v. Rivera–Martinez*, 931 F.2d 148, 151 (1st Cir.1991). It is not bound by the higher court's dicta either. *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 533 (7th Cir.1982); *Coca–Cola Bottling Co. v. Coca–Cola Co.*, 988 F.2d 414, 429 (3d Cir. 1993); *Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller*, 957 F.2d 1575, 1578 (11th Cir.1992). But explicit rulings on issues that were before the higher court and explicit directives by that court to the lower court concerning proceedings on remand are not dicta. *Harris v. Sentry Title Co.*, 806 F.2d 1278, 1280 n. 1 (5th Cir.1987) (per curiam); see also *Colville Confederated Tribes v. Walton*, 752 F.2d 397, 400–01 (9th Cir. 1985). That the panel described its directives euphemistically as "comments" that might be useful to the district judge did not authorize the judge to ignore them.

Far from identifying any errors in the panel's opinion or paring dicta from holdings and suggestions from directives, Judge Mills did not so much as mention the opinion. It is true that Cole's briefs and other submissions in the district court as in this court have been prolix, confusing, and frequently

belated and unresponsive. But the district court's award of zero damages was not based on waiver or imposed as a sanction, and so far as we can discern from a muddy record, Cole has a case for a substantial award of damages—more than zero, in any event—though much less than the $1.5 million or so that it seeks.

■ Cole paid more than $56,000—perhaps as much as $92,000—under the lease before canceling it because of the breach of warranty. The validity of the cancellation is no longer in question. So Cole is, prima facie at least, entitled to the return of these payments, with interest at 5 percent. Not 9 percent under 815 ILCS 205/4, as Cole argues; the applicable statute is 815 ILCS 205/2, interpreted in *Art Press Ltd. v. Western Printing Machinery Co.*, 852 F.2d 276, 279 (7th Cir.1988), to be applicable to a case such as this. So the panel ruled in the previous opinion, and the ruling became the law of the case. No doubt Ingersoll–Rand could set off against this liability any damages it incurred as a result of a breach of contract committed by Cole, an issue not discussed in the previous opinion. But a setoff based on what is, so far as appears, a completely technical, harmless breach—delay in giving notice of cancellation, a delay that Ingersoll–Rand argues entitled it to continued rental payments until the notice was given even though it knew that the lease had been cancelled and for good cause, a delay that would at most justify an award of nominal damages had Ingersoll–Rand sued for breach of contract—is unreasonable and Cole would be entitled to the full return of its payments. A setoff is for most purposes just a permissive counterclaim, *Coplay Cement Co. v. Willis & Paul Group*, 983 F.2d 1435, 1440–41 (7th Cir.1993), and a permissive counterclaim that entitles the claimant to zero damages will not reduce the main claim by a penny. Judge Mills correctly declined to award Ingersoll–Rand any cancellation charges: you cannot by your own breach cause the other party to the contract to cancel and hold him to his promise to pay cancellation charges. He should have denied the setoff for unpaid rent as well.

We have not finished with setoffs. To the extent that Cole, notwithstanding the breach of warranty, derived some value from the gas compressors before returning them to Ingersoll–Rand (yet not enough to preclude Cole's rescinding, cf. *Fortin v. Ox–Bow Marina, Inc.*, 408 Mass. 310, 557 N.E.2d 1157, 1162 (1990)), the latter would have a claim in quantum meruit to offset against Cole's demand for the return of the lease payments. This is the force of the language in UCC § 2A–508(1)(b) that the lessee is entitled to "recover so much of the rent . . . [as] is just under the circumstances." See Official Comment 2. Although Article 2A (leases) was not yet in force when this suit was brought seven years ago, the same result had long been reached in sales cases, see *Erling v. Homera, Inc.*, 298 N.W.2d 478, 483–84 (N.D. 1980); James J. White & Robert S. Summers, *Uniform Commercial Code* § 8–3 at pp. 366–68; § 8.5 at p. 377 (3d ed. 1988), applicable by analogy, we said, to lease cases decided before Article 2A was promulgated. But all this is an aside, as Ingersoll–Rand has not argued quantum meruit.

We do not know what happened to Cole's incidental damages. The judge had assessed them at almost $70,000 and the panel took that figure as a baseline for figuring damages. They disappeared in a puff of smoke in the opinion on remand. As for the consequential damages, by cutting them down on the basis of the co-ownership of the gas field Judge Mills violated our instructions. If new evidence was presented to him establishing an error in our opinion on this question, he did not mention it. We also cannot determine from his opinion on remand whether in calculating consequential damages he restored the specific items that we said in our previous opinion he had erroneously excluded.

In all likelihood, however, the issues concerning incidental and consequential damages are academic. A provision in the lease, mentioned but not ruled on in our first opinion, 913 F.2d at 1199 (because the district judge had not yet considered it), caps consequential and incidental damages at the lease payments made by Cole. The lease also contains a disclaimer of all consequential and

incidental damages, and the judge, citing section 2–719 of the Uniform Commercial Code, had in the first round held this disclaimer invalid. On remand he upheld the cap. There is no inconsistency. The UCC disfavors disclaimers that leave the victim of a breach of contract without any remedy. UCC § 2–719(2) and Official Comment 1; *AES Technology Systems, Inc. v. Coherent Radiation,* 583 F.2d 933, 939 (7th Cir.1978). It does not disfavor "limit[s on] ... the measure of damages recoverable," UCC § 2–719(1)(a), and gives the specific example of limiting a buyer to recovery of the price. See also *V–M Corp. v. Bernard Distributing Co.,* 447 F.2d 864, 868 (7th Cir.1971).

Of course if the lessee were always entitled to recover in the event of a lessor's breach all the payments he had made under the lease, the cap would have the practical effect of eliminating the lessee's remedy in damages and limiting him to his right to rescind. Rescission is, however, a remedy, and a limited remedy is unenforceable under the UCC only if it would "fail of its essential purpose." UCC § 2–719(2). Waivers of consequential damages are not prohibited unless "unconscionable," § 2–719(3), and the same principle has, sensibly in our view, been assumed applicable to waivers of incidental damages. *Xerox Corp. v. Hawkes,* 124 N.H. 610, 475 A.2d 7, 10 (1984); *Middletown Concrete Products, Inc. v. Black Clawson Co.,* 802 F.Supp. 1135, 1153 (D.Del.1992); 3 Dan B. Dobbs, *Law of Remedies* § 12.16(4) at p. 379 (2d ed. 1993). If such a waiver is unconscionable, then—of course (see UCC § 2–302)—it cannot stand. Otherwise it is permissible, provided that the limited remedy which remains after the waiver satisfies the criterion of section 2–719(2). At all events, we saw earlier that the rescinding lessee is not always entitled to the return of all the payments he has made under the lease, and in a case where he is not the cap permits him to seek damages up to the limit of the payments made. So there is some room, in some circumstances, for an award of damages under the lease and not merely for rescission. But we emphasize that a limitation of remedies is not invalid merely because it strips the promisee of his damages remedies and remits him to rescission.

The case must be remanded again, for further proceedings consistent with this and our previous opinion. Our circuit rule 36 provides that unless we direct otherwise a remanded case that has been tried shall be reassigned to a different district judge. This case was tried, but because one of the errors identified in our previous opinion was the trial judge's failure to make required findings, the case was remanded to Judge Mills. He made those findings, thus completing the trial. Hence the remand that we are ordering today will result in reassignment to a different judge.

REVERSED AND REMANDED.