**COLE ENERGY DEVELOPMENT COMPANY, Plaintiff,**

v.

**INGERSOLL–RAND COMPANY, Defendant.**

No. 86–3303.

United States District Court,
C.D. Illinois,
Springfield Division.

Feb. 10, 1994.

Nils A. Olsen, Harold M. Olsen, Springfield, IL, for plaintiff.

Michael J. Roberts, Grand Rapids, MI, for defendant.

### OPINION

RICHARD MILLS, District Judge:

This cause is before the Court on remand for further proceedings before another district judge. *Cole Energy Development Co. v. Ingersoll–Rand Co.,* 8 F.3d 607, 611 (7th Cir.1993). In order to assist the judge who will hear the case, the Court believes that a background summary is in order.

### I.

This is the third time this case has been before this Court. The case involves a breach of contract suit against the lessor of compressors used by Cole Energy to extract natural gas from its Fishhook gas field in Illinois. Cole is a one-fourth owner of the Fishhook Field. None of the other shareholders of the gas field were named as par-

ties to the complaint. On December 5, 1983, Cole and Ingersoll–Rand entered into two written contracts for the lease of two gas compressors to be used by Cole and its co-shareholders for the extraction of natural gas from the Fishhook Field. Cole was the sole signatory to the leases. Paragraph 17 of each contract specifies that the only warranties made by Ingersoll–Rand are those contained in the factory warranty delivered to the lessee. Ingersoll–Rand expressly disclaimed any other representations or implied warranties and specifically disclaimed the Illinois implied warranties of merchantability and fitness for a particular purpose.

The Ingersoll–Rand factory warranty provides that the equipment manufactured and delivered for lease will be free of defects in material or workmanship for a period of 12 months from the date of placing the equipment in operation or 18 months from the date of shipment, whichever comes first, and that the only performance warranties made a part of the express factory warranty are those contained in the proposal presented to the lessee. The performance warranty provided to Cole guarantees a capacity, or flow, of 2.16 million cubic feet of gas from the field to the end of the compressor if there is a certain inlet and outlet pressure, if there is a sufficient field of natural gas, and if certain other requisite conditions on the proposal sheet are satisfied.

However, shortly after the leased compressors were put into operation by Cole, they began to malfunction, and after more than 15 service calls, the compressors could not be restored to adequate working condition and never produced the guaranteed flow of natural gas. Consequently, on August 9, 1985, Cole exercised its right to cancel the two leases, thereby effecting a revocation of acceptance of the leased equipment under § 2–608 of the Uniform Commercial Code (U.C.C.).[1] Following Cole's revocation of acceptance of the compressors, it replaced the equipment with a three-stage Cormar compressor in order to extract the natural gas from the Fishhook Field. The rental cost of

the Cormar compressor was less than that of the Ingersoll–Rand compressors.

Cole brought suit against Ingersoll–Rand asserting fraud and breach of express and implied warranties, seeking over $2 million in damages. However, Paragraph 18 of the lease agreements limits the total liability for breach of the factory warranty to the amount of lease payments made by the lessee and excludes recovery of any consequential damages. Initially, in ruling on Ingersoll–Rand's motion for partial summary judgment, this Court found the limitation on total damages and the exclusion of consequential damages to be enforceable under § 2–719 of the U.C.C. due to lack of unconscionability. *Cole Energy Development Co. v. Ingersoll–Rand Co.,* 678 F.Supp. 208, 210–12 (C.D.Ill.1988). This Court also dismissed Cole's claim for breach of implied warranty, finding the disclaimer in the leases to be sufficiently conspicuous under Illinois law. *Id.* at 212.

On May 24, 1988, this Court began a nine-day bench trial on Cole's claims of fraud and breach of express warranty. After the conclusion of the bench trial on June 8, 1988, the Court issued its findings. The Court found that Cole had failed to establish fraud by a preponderance of the evidence, but the Court found in favor of Cole on the breach of warranty claim. Additionally, this Court held that the provision against recovery of consequential damages in Paragraph 18 of the leases was unenforceable due to the willfulness and dilatoriness of Ingersoll–Rand in failing to effectuate its limited express warranty.

The parties were then asked to submit summaries with supporting affidavits on the issue of damages. The parties did not object to this request. Following submission of briefs, the Court, in a detailed order, awarded Cole $17,192.25 in damages for Ingersoll–Rand's breach of its express warranty. The Court denied Cole's request for over $1.6 million in lost revenue, finding that there were no lost profits, but only delayed profits, as Cole was eventually able to recover and sell at the same price all of the gas that

---

1. Article 2A of the Uniform Commercial Code governing leases was not in effect at the time this lawsuit arose.

would have been retrieved by the Ingersoll–Rand compressors. The Court denied Cole recovery of foregone interest on the delayed profits, on the basis that prejudgment interest was prohibited under Illinois law.

The $17,192.95 in damages awarded was based on $68,769 in repair expenses, miscellaneous expenses, and extra labor costs incurred by the Fishhook Field as a consequence of Ingersoll–Rand's failure to remedy the defects in the compressors pursuant to the warranty. The $68,769 total was reduced by 75% because Cole, as a 25% shareholder of the Fishhook Field, was only responsible for 25% of the expenses incurred by the field in its operations. The Court held that Cole was not entitled to recovery for losses it was not forced to bear.

The Court indicated that the determination of damages was extremely difficult in view of the poor quality of Cole's submissions. Rather than present specific proof of the amount of loss it had sustained as a result of Ingersoll–Rand's breach of warranty, Cole simply demanded the more than $2 million that it had originally requested and buried the Court in a sea of documents. As a result, the Court was "left to its own devices" to determine the amount of damages, with the damages analysis becoming "a cottage industry," despite the Court's admonition at the close of trial for the parties to submit proof of damages "as concisely as possible."

## II.

Cole appealed this Court's award of damages. The Court of Appeals held, however, that it could not ascertain from the rulings of this Court exactly what type of warranty Ingersoll–Rand had allegedly breached. *Cole Energy Development Co. v. Ingersoll–Rand Co.,* 913 F.2d 1194, 1201 (1990). Consequently, the appellate court vacated this Court's award of damages and remanded the case for this Court to "make explicit its findings about the nature and scope of the warranty and Ingersoll's liability" under the warranty, and for this Court to then make a new determination of damages. *Id.*

## III.

Upon remand, this Court directed the parties to submit proposed findings of fact with respect to the warranty at issue and Ingersoll–Rand's performance thereunder. After more than a year of delay by Cole in filing its proposed findings, the Court was finally able to address the nature and scope of the Ingersoll–Rand warranty. The Court reviewed the two lease agreements and determined that Ingersoll–Rand had expressly warranted the equipment leased to Cole to be free of defects in material or workmanship. Ingersoll–Rand had also issued a performance warranty that the compressors would produce a flow of 2.16 million cubic feet of gas if certain conditions of operation were satisfied. The Court found that the factory warranty provided for repair or replacement of defective equipment and limited the total liability of Ingersoll–Rand for breach of its express warranty to the total amount of lease payments made by the lessee. The Court also determined that there were no other express warranties made by Ingersoll–Rand and that Ingersoll–Rand had adequately disclaimed all implied warranties.

Having determined the nature and scope of the warranty at issue, the Court then found that Ingersoll–Rand had breached its express warranty by providing defective equipment to Cole and failing to restore the leased compressors to an adequate working condition. Because of the willfulness and dilatoriness of Ingersoll–Rand in attempting to effectuate its warranty, though, the Court held the bar against recovery of consequential damages in Paragraph 18 of the lease to be unenforceable. As a result of Ingersoll–Rand's breach of warranty, the Court stated that Cole was entitled to damages for the losses caused by the breach under § 2–714 of the U.C.C., including consequential damages. However, the Court noted that the total damages were limited to the total amount of lease payments that had been made by Cole. The Court also noted that Ingersoll–Rand was entitled to setoff for Cole's failure to mitigate damages, for any unpaid rent prior to Cole's August 9, 1985 revocation of acceptance of the leased equipment, and for possible cancellation charges.

Once these findings of fact with respect to Ingersoll–Rand's liability had been made by the Court, the Court then propounded five specific questions to the parties concerning the damages calculation. The Court directed the parties to submit proof of the amount of damages in response to each of the five questions, since the amount of damages could be established entirely by documentary evidence. The parties subsequently filed their submissions on damages, without objection to the Court's request.

Consistent with its prior practice in this Court, Cole submitted a plethora of materials which were not in compliance with the Court's order concerning damages and which were unpersuasive and nonresponsive as to the actual amount of damages incurred by Cole under § 2–714 of the U.C.C. Essentially, Cole reiterated its prior request for an award of over $1.6 million in damages, without providing adequate supporting documentation. However, Ingersoll–Rand submitted materials which were clear and succinct responses to the five questions on damages that had been propounded by the Court. It was on the basis of those submissions and a review of the record that the Court was able to make a new determination of damages.

The Court found that the total lease payments made by Cole for the Ingersoll–Rand compressors amounted to $65,582.46. This amount constituted the maximum recovery that Cole could obtain. Next, the Court examined the amount of direct and consequential damages sustained by Cole as a result of Ingersoll–Rand's breach of warranty. The Court found that the correct measure of damages for the delayed production caused by the defective Ingersoll–Rand compressors was any income lost on foregone investment of the delayed profits associated with the delayed production. Other direct damages included the extra cost, if any, of the replacement Cormar compressor.

However, the re-rental cost of the Cormar compressor was less than that of the Ingersoll–Rand compressors, and Cole failed to submit any proof of either the amount of delayed profits or of the lost investment revenue from the delayed profits. Even if Cole had been able to establish foregone invest-ment income from the delayed profits, the Court held that the collection of prejudgment interest on delayed profits is prohibited under Illinois law, beyond the statutory provision therefor. *See National Wrecking Co. v. Coleman*, 139 Ill.App.3d 979, 984, 94 Ill.Dec. 287, 487 N.E.2d 1164 (1985) (holding that a party cannot recover lost investment value caused by a breach of contract above the 5% statutory rate provided for in 815 ILCS 205/2). Because Cole failed to provide information concerning the amount of delayed profits, there was no basis for the Court to make an award of damages for any foregone interest on those profits.

Next, the Court determined that Ingersoll–Rand's breach of warranty had caused the owners of the Fishhook Field to expend $31,075.41 for extra parts and labor in attempting to restore the Ingersoll–Rand compressors to proper working condition. The Court fixed this amount as the consequential damages caused by the breach. However, because Cole was a one-fourth owner of the field and was reimbursed by its co-shareholders for three-fourths of the expenses of production, the Court reduced the amount of damages by 75%, to $7,768.85, to reflect the actual amount of consequential damages incurred by Cole.

The parties stipulated that the amount of damages caused by Cole's failure to mitigate its loss was minimal and should be fixed at $0.00. Ingersoll–Rand then introduced documentary evidence that the unpaid rent under the two leases prior to Cole's revocation of acceptance of the compressors was $16,600, which this Court offset against Cole's consequential damages of $7,768.85. Because Cole was the sole signatory on the leases, it alone was responsible for making rental payments to Ingersoll–Rand.

Contrary to the argument asserted by Cole before the Court of Appeals, there is no basis for awarding Cole a refund of all rents paid prior to its rejection of the leased equipment. Once Cole had accepted the equipment, it was obligated to pay the contractual rent therefor under § 2–607 of the U.C.C., and it was entitled to stop paying rent only after revoking its acceptance of the compressors on August 9, 1985. As a result of

Ingersoll–Rand's breach of warranty, though, Cole was entitled to receive compensation for any loss caused by the malfunctioning equipment under § 2–714 of the U.C.C., entitled "Buyer's damages for breach in regard to accepted goods."

As to the cancellation charges listed in the leases, the Court found that because Cole was justified in revoking its acceptance of the leased equipment due to material defects, any provision calling for Cole to pay a charge for cancelling the leases was unenforceable. Consequently, the Court denied Ingersoll–Rand recovery on its counterclaim.

Considering all of the amounts of damages submitted anew, the Court found that the setoff for unpaid rent prior to the time of revocation of acceptance exceeded the amount of consequential damages due to Cole by over $8,000. Therefore, the Court held that Cole was not entitled to receipt of any damages from Ingersoll–Rand for its breach of express warranty. Accordingly, the case was terminated.

### IV.

Cole filed another appeal of this Court's damages ruling, and the appellate court, without analyzing this Court's revised findings on liability (contained in a separate and detailed order), remanded the case for reassignment to a different judge for further proceedings on Cole's damages claims. *Cole Energy Development Co. v. Ingersoll–Rand Co.*, 8 F.3d 607, 611 (7th Cir.1993). Apparently, the appellate court was not aware that this Court had issued a renewed determination of damages in light of those explicit findings made concerning the nature and scope of the Ingersoll–Rand warranty and the Defendant's liability under that warranty for its failure to adequately repair the defective gas compressors. *Id.* at 609–10. It was on the basis of the revised liability findings, which had been ordered by a different panel of the Court of Appeals, that this Court established the new damages. *See Cole Energy*, 913 F.2d at 1201.

It is Cole Energy who bore the burden of establishing the amount of damages, but due to Cole's repeated failure to file proof of its damages, the Court was once again "left to its own devices" to determine the proper amount of damages. It appears that the appellate court does not take issue with the revised findings of liability entered by this Court, but only with the amount of damages awarded to Cole. *Cole Energy*, 8 F.3d at 610–11. However, this Court could only set damages based on the evidentiary proof submitted by the parties, and given the unsubstantiated nature of Cole's submissions, the Court is aware of no other method that could have been used to arrive at any other award of damages for Ingersoll–Rand's breach of its express warranty.

This system of ours is still an adversarial one, placing the burden upon the party with the laboring oar. Cole failed in its obligation.

*Ergo,* pursuant to the mandate of the Court of Appeals, this case is hereby transferred to Chief Judge Mihm for reassignment.

SO ORDERED.