**In re Craig and Deborah ALLEN, Debtors.**

**Tamalou WILLIAMS, Trustee, Plaintiff,**

v.

**PEOPLES FIRST NATIONAL BANK & TRUST COMPANY, Defendant.**

**Bankruptcy No. 97–41577.**

**Adversary No. 98–4011.**

United States Bankruptcy Court, S.D. Illinois.

May 28, 1998.

Tamalou Williams, West Frankfort, IL, for Plaintiff.

David G. Wasinger, St. Louis, MO, for Defendant.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

The trustee in this case seeks to avoid a lien on the debtors' mobile home, held by Peoples First National Bank & Trust Company ("Bank"), that was perfected prior to bankruptcy by notation on the mobile home's certificate of title. The trustee asserts that the mobile home has since become so affixed to the real estate as to constitute a fixture and that, therefore, the Bank's notation of lien on the mobile home title is ineffective to prevail against her judgment lien acquired at the time of bankruptcy by virtue of 11 U.S.C.

1. Under § 544(a)(1), the trustee acquires, as of the commencement of a bankruptcy case, the status of a hypothetical judgment lien creditor and "may avoid any ... obligation incurred by the debtor that is voidable by [such creditor]." 11 U.S.C. § 544(a)(1).

2. Under Illinois law, whether an article or structure constitutes a fixture requires a factual inqui-

§ 544(a)(1).[1] The trustee contends that under the provisions of the Uniform Commercial Code ("UCC") governing fixtures, see 810 Ill. Comp. Stat. 5/9–313 (1995), the Bank was required to have perfected its lien by filing an Article 9 financing statement in either the personal property or the real estate records in order to prime the trustee's lien on the mobile home as a fixture. The Bank, while not conceding the factual issue of whether the mobile home has become a fixture,[2] asserts that even if this property constitutes a fixture, the Bank's notation of lien on the mobile home title is sufficient under the relevant statute to grant it priority over the trustee as a judgment lien creditor.

Section 9–313 of the UCC establishes rules for resolving conflicts when competing claims are made to items of personalty that have become fixtures. These rules are directed at conflicts between a fixture financer and one claiming an interest in the fixture as an owner or encumbrancer of the real estate. In the majority of fixture priority disputes, the security interest must be perfected by filing a financing statement in the real estate records—known as a "fixture filing," see 810 Ill. Comp. Stat. 5/9–313(1)(b)—in order to prevail over a preexisting or subsequently recorded interest in the real estate. See 810 Ill. Comp. Stat. 5/9–313(4)(a), (b); 9 Hawkland, *Uniform Commercial Code Series*, § 9–313:(5), at 9–331 to 9–333 (1997). However, under § 9–313(4)(d), when the conflicting real estate interest is a judgment lien acquired after perfection of the fixture security interest, such perfection need not be by filing in the real estate records, but may be "by any method permitted by [Article 9]." Subsection (4)(d) states:

(4) A perfected security interest in fixtures has priority over the conflicting in-

ry based on three criteria: (1) actual annexation to the realty, (2) application to the use or purpose for which the land is appropriated, and (3) intention to make the article a permanent accession to the realty. *See In re Casper*, 156 B.R. 794, 802 (Bankr.S.D.Ill.1993), citing, e.g., *Sword v. Low*, 122 Ill. 487, 496, 13 N.E. 826, 828 (1887).

terest of an encumbrancer or owner of the real estate where

. . . . .

(d) the conflicting interest is a lien on the real estate obtained by legal or equitable proceedings after the security interest was perfected *by any method permitted by this Article.*

810 Ill. Comp. Stat. 5/9–313(4)(d) (emphasis added).

In their comment to § 9–313(4)(d), the drafters note that this provision preserves the usual UCC rule based on precedence in filing or recording but does not require, as against a judgment lienor of the real estate, that the prior filing of the fixture security interest be in the real estate records. Rather, they state, since a judgment creditor is not a reliance creditor who would have searched the records, *"even a prior filing in the chattel records* protects the priority of a fixture security interest against a subsequent judgment lien." 810 Ill. Comp. Stat. Ann. 9–313, comment (4)(c), at 440–41 (West 1993) (emphasis added). The intent of this subsection, according to its drafters, is to ensure a fixture financer's priority as against a bankruptcy trustee with the rights of a judgment lien creditor under § 544 of the Bankruptcy Code. Section 9–313(4)(d) thus preserves the traditional Article 9 preference for the giver of new value over a lien creditor, codifying, in a fixture setting, the general rule that a perfected security interest prevails over subsequent lien creditors. *See* 9 Hawkland, *supra,* § 9–313:5, at 9–334 to 9–335.

The trustee in this case, while recognizing the intended effect of § 9–313(4)(d) of preserving a fixture financer's perfected security interest in the event of bankruptcy, argues nevertheless that in order to gain such protection, the fixture claimant must have perfected its lien by a UCC filing and not, as here, by notation of the Bank's lien on the mobile home's certificate of title. As support for her position, the trustee points to the drafters' statement, in comment (4)(c), that "even a prior filing in the chattel records" suffices to protect a fixture security interest from invalidation in bankruptcy and reasons, from this, that the language of subsection (4)(d) granting priority to a fixture interest

that is perfected "by any method permitted by this Article" must be interpreted as requiring the filing of a financing statement in either the chattel or the real estate records.

■ The Court is aware of no case that addresses the meaning of the phrase "by any method permitted by this Article" in subsection (4)(d) or, more specifically, that addresses whether perfection of a fixture security interest under this subsection requires an Article 9 filing in the public records. In a case involving similar facts, *In re Lucero,* 203 B.R. 322 (10th Cir. BAP 1996), the court held that the bankruptcy trustee could not avoid a creditor's purchase money lien on the debtors' mobile home as a hypothetical judgment creditor under § 544, where the creditor had perfected its lien by notation on the vehicle's certificate of title pursuant to applicable law, *see* N.M.Stat. Ann. § 66–3–201 (1978), but had not made a fixture filing in the real estate records. *See Lucero,* at 323. In finding that the creditor's lien was valid pursuant to § 9–313(4)(d), the court not only referred to the drafters' statement in comment (4)(c) regarding "a prior filing in the chattel records" but also quoted from Professors White and Summers' commentary on the UCC, which reiterated the drafters' intent to subordinate the bankruptcy trustee to a secured creditor " 'who ha[s] perfected by any method, *i.e., a personalty filing in the Article 9 files or a fixture filing in the real estate records.'* " *Lucero,* at 325 (emphasis added), *quoting* 4 White & Summers, Uniform Commercial Code § 33–10(c), at 346 (4th ed.1995). However, rather than concluding, as the trustee has here, that an Article 9 filing is required to gain the protection of § 9–313(4)(d), the *Lucero* court simply assumed, without discussion, that the creditor's perfection of its lien in that case by notation on the mobile home title was sufficient under § 9–313(4)(d) to gain priority over the trustee as judgment lien creditor. *See id.*

■ Notwithstanding the summary nature of the *Lucero* court's ruling, this Court agrees with the result reached there, finding such outcome to be consistent with the language of § 9–313(4)(d) when read according to its express terms. It is a basic tenet of

statutory construction that interpretation of a statute begins with the wording of the statute itself, and it is only when the statutory language is ambiguous that a court may look to other sources to ascertain legislative intent. *See, e.g., United Services Auto. Assn. v. Perry,* 102 F.3d 144, 146–47 (5th Cir.1996); *Veprinsky v. Fluor Daniel, Inc.,* 87 F.3d 881, 888 (7th Cir.1996). A statute is ambiguous if it is susceptible of more than one accepted meaning. *Perry,* at 146. It is assumed, however, that the words of the statute are used in their ordinary sense, *see Alexander S. v. Boyd,* 113 F.3d 1373, 1383 (4th Cir.1997), and if the language of the statute is clear, the court should follow that language, rather than " 'isolated excerpts from the legislative history.' " *In re Boulders On The River, Inc.,* 218 B.R. 528, 537 (D.Or.1997), *quoting Patterson v. Shumate,* 504 U.S. 753, 761 n. 4, 112 S.Ct. 2242, 2248 n. 4, 119 L.Ed.2d 519 (1992).

In this case, the statutory language at issue grants priority, over a later judgment lien, to a fixture security interest perfected "by any method permitted by [Article 9]." The phrase—"by any method permitted"—is manifestly expansive in nature rather than, as urged by the trustee, restrictive and limiting. Indeed, the word "any" indicates an indiscriminate inclusiveness, being defined as "one or another without restriction or exception." Webster's II, New Riverside University Dictionary, at 115 (1988); *see also Boyd,* at 1383 (noting the broad and inclusive nature of the term "any"). The phrase "permitted by" is likewise open-ended, allowing for perfection other than by the filing of a financing statement so long as Article 9 authorizes such method of perfection. Ironically, the only indication that subsection (4)(d) requires the filing of a financing statement "in the chattel records" comes from the drafters' comment (4)(c), which can be read equally well as setting forth an example of possible methods of perfecting a fixture security interest. In any event, since the language of the statute is clear and does not lead to more than one plausible interpretation, there is no necessity to look elsewhere in the legislative history for clarification of the statutory meaning.

While Article 9 outlines perfection requirements for personal property security interests generally, it by no means specifies that all such interests be perfected by filing a financing statement. Section 9–302(1) enumerates some nine types of security interests that are exempted from the filing requirements of Article 9 and that are, instead, to be perfected by methods other than the filing of a financing statement. *See* 810 Ill. Comp. Stat. 5/9–302(1)(a)–(i). In addition, § 9–302(3) explicitly provides that filing a financing statement is neither necessary nor effective to perfect a security interest in, among other things, motor vehicles subject to the Illinois Vehicle Code.[3] The Vehicle Code confirms that filing a financing statement is ineffectual to perfect a security interest in a vehicle, stating that

> [t]he method provided in this act [the Vehicle Code] of perfecting and giving notice of security interests subject to this act *is exclusive.* Security interests subject to this act *are hereby exempted from the provisions of law which otherwise require or relate to the recording or filing of instruments creating or evidencing security interests in vehicles* . . . .

625 Ill. Comp. Stat. 5/3–207 (emphasis added).

Section 9–302(3)(b), by incorporating the provisions of the Illinois Vehicle Code by reference, not only permits but, indeed, requires that a security interest in vehicles be perfected by a method other than filing a financing statement under Article 9. The Vehicle Code directs that such interests be perfected by notation of the creditor's lien on

---

**3.** Section 9–302(3) states, in pertinent part:

(3) The filing of a financing statement otherwise required by this Article is not necessary or effective to perfect a security interest in property subject to

. . . . .

(b) the following statutes of this State: the Illinois Vehicle Code[.]

810 Ill. Comp. Stat. 5/9–302(3).

the vehicle's certificate of title. *See* 625 Ill. Comp. Stat. 5/3–202. It follows, therefore, that this method comes within the meaning of "by any method permitted by this Article" in § 9–313(4)(d) and that such perfection is sufficient to protect a fixture creditor from later judgment liens pursuant to that provision.

■ Despite the explicit language of § 9–313(4)(d), the trustee persists in her argument that once a vehicle becomes a fixture, an additional step—filing a financing statement under Article 9—is required to withstand avoidance by a judgment creditor such as a bankruptcy trustee under § 544(a)(1). As further support, she cites § 9–302(1)(d), which states:

> (1) A financing statement must be filed to perfect all security interests except the following:
>
> .    .    .    .    .
>
> (d) a purchase money security interest in consumer goods; *but filing is required for a motor vehicle required to be registered; and fixture filing is required for priority over conflicting interests in fixtures to the extent provided in Section 9–313[.]*

810 Ill. Comp. Stat. 5/9–302(1)(d) (emphasis added).

The trustee reads the second and third clauses of this subsection together, interpreting them to mean that although perfection of a lien on a mobile home by notation on the title is sufficient so long as the mobile home remains a vehicle, once it becomes affixed to the real estate and changes character, the method of perfection applicable to vehicles is no longer adequate to give the purchase money creditor priority over a lien creditor claiming a superior interest in the mobile home as a fixture. In that instance, the trustee insists, the mobile home financer's lien prevails only if it has been perfected by an Article 9 filing either in the personal or real property records.

Section 9–302(1)(d) is, admittedly, less than a model of clarity. However, the error of the trustee's argument becomes apparent upon careful analysis. The first clause of subsection (1)(d) contains an exception to the general filing requirement of § 9–302(1) for collateral constituting consumer goods, providing a rule of automatic perfection for purchase money interests in such goods with no need to take further action to achieve or continue perfection. *See* 8 Hawkland, *supra*, § 9–302:6, at 1327. The second and third clauses set forth two exceptions to this rule of automatic perfection. *See id.* These exceptions, concerning motor vehicles and fixtures, are each an exception to the primary exception to filing for property qualifying as consumer goods. In the case of purchase money interests in consumer goods that are motor vehicles, automatic perfection does not apply, and creditors must comply with the Article 9 filing requirements for such vehicles. *See id.,* § 9–302:8, at 1331–1332. Further, when the purchase money interests are in consumer goods that are also fixtures, creditors are required to perfect by filing to the extent provided in § 9–313. *See id.,* § 9–302:7, at 1330–1331.

In the present case, the collateral at issue—the debtors' mobile home—constitutes both a motor vehicle *and* a fixture, and a creditor seeking priority over competing interests must heed both exceptions to the automatic perfection rule of § 9–302(1)(d). This does not mean, however, that perfection may be attained only by filing a financing statement in the public records. As explained previously, where motor vehicles are concerned, the procedure specified by Article 9 is that set forth in the Illinois Vehicle Code of noting a creditor's lien on the vehicle's certificate of title. Section 9–302, which sets forth this exception to filing a financing statement in subsection (3)(b), further provides in subsection (4) that

> [c]ompliance with a statute [here, the Illinois Vehicle Code] ... described in subsection (3) *is equivalent to the filing of a financing statement under this Article,* and a security interest in property subject to the statute ... can be perfected only by compliance therewith ....

810 Ill. Comp. Stat. 5/9–302(4). Thus, in the present case, the Bank properly complied with the first exception to the automatic per-

fection rule of § 9–302(1)(d) by noting its lien on the title to the debtors' mobile home.[4]

The second exception regarding fixtures states only that a fixture filing is required "to the extent provided" in § 9–313. Again, as set forth previously, a creditor with an interest in property that becomes a fixture need not perfect by filing a financing statement in order to prevail against subsequent judgment creditors, but must merely perfect "by any method permitted by [Article 9]." 810 Ill. Comp. Stat. 5/9–313(4)(d). If the property is a vehicle, notation of the creditor's lien on the vehicle title is a method not only sanctioned but required by Article 9. When, following such perfection, the vehicle becomes a fixture by attachment to the real estate, subsection (4)(d) allows for continued perfection of the creditor's lien against non-reliance creditors such as a trustee in bankruptcy. While the creditor would be required to make a fixture filing in the real estate records to protect against other creditors holding interests of record in the real estate, *see* 810 Ill. Comp. Stat. 5/9–313(4)(a) and (b),[5] no such fixture filing is required to retain priority against a judgment lien creditor whose interest arises after perfection of the creditor's lien by notation on the vehicle title.

In this case, the Bank properly perfected its lien by notation on the title to the debtors' mobile home prior to the debtors' bankruptcy filing. As a result, the Bank's lien is superior to the trustee's judgment lien acquired upon commencement of the case, and the trustee has no authority to avoid the Bank's lien in this action under § 544(a)(1). Accordingly, the Court finds that the Bank's motion to dismiss the trustee's complaint should be granted.

---

4. All states now have statutory provisions outside Article 9 requiring security interests on motor vehicles to be perfected by notation on the certificate of title rather than by the filing of a financing statement under Article 9. *See* Hawkland, *supra*, § 9–302:14, at 9–1352. Thus, as a practical matter, no filing will take place notwithstanding § 9–302(1)(d), as states have provided this alternative notice system for interests in motor vehicles.

5. This Court has previously ruled, in a case involving a prior real estate mortgage, that the mobile home lender was required to make a fixture filing in order to prevail over the conflicting interest of the mortgagee once the mobile home became a fixture. *See In re Beabout*, 110 B.R. 883, 886–87 (Bankr.S.D.Ill.1990).