**In re Edwin STACY, Debtor.**

**David R. BROWN, Trustee, Plaintiff,**

v.

**Edwin STACY and Marie Stacy, Defendants.**

**Bankruptcy No. 96 B 23596. Adversary No. 97 A 01018.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Dec. 3, 1998.

Brian J. Wanca, Roberta K. Kanabay, Rolling Meadows, IL, for Plaintiff.

John V. Del Gauidio, Jr., Chicago, IL, for Defendants.

David R. Brown, Roselle, IL, Trustee.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the motion of Edwin Stacy (the "Debtor") and his spouse, Marie Stacy, to dismiss the amended complaint filed by David R. Brown, Trustee of the Debtor's Chapter 7 estate (the "Trustee") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth herein, the Court denies the motion to dismiss. The Debtor and his spouse shall file an answer and any affirmative defenses within thirty days hereof. Concurrently entered herewith is a Preliminary Pretrial Order setting this adversary proceeding for pretrial conference on February 5, 1999 at 9:00 a.m.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(H) and (O).

## II. FACTS AND BACKGROUND

Many of the facts in this matter are undisputed. On May 2, 1993, Days Inns of America, Inc. ("Days Inn") filed a lawsuit in the Circuit Court of DuPage County, Illinois against, inter alia, the Debtor. While that action was pending, on November 21, 1994, the Debtor transferred his and his wife's marital residence in Hinsdale, Illinois (the "Hinsdale Property") then titled in an Illinois land trust, in which they owned the beneficial interest, to themselves in an Illinois tenancy by the entirety. On September 16, 1996, Days Inn received a judgment against the Debtor in the amount of $328,586.37 and was later awarded attorney's fees in the sum of $109,520.79.

The Debtor filed a Chapter 13 petition on September 9, 1996, which was subsequently converted to Chapter 7. The Debtor claimed the Hinsdale Property exempt on his Schedule C pursuant to 11 U.S.C. § 522 and the Illinois tenancy by the entirety statute 735 ILCS 5/12–112 (" § 12–112").

Thereafter, on July 30, 1997, the Trustee commenced the instant adversary proceeding against the Debtor and his spouse. The Trustee alleged in Count I of the complaint that the transfer of the Hinsdale Property by the Debtor to himself and his spouse as tenants by the entireties was a fraudulent transfer in violation of the Illinois Fraudulent Transfer Act, 740 ILCS 160/1 *et seq.* In Count II of that complaint, the Trustee alleged that the Debtor claimed his entire interest in the Hinsdale Property as exempt property in his Schedule C attached to the Chapter 7 bankruptcy petition. The Trustee alleged that to the extent that the Debtor's transfer of ownership in the Hinsdale Property into a tenancy by the entirety was avoided under Count I, then his claim of exemption must fail.

On August 12, 1997, the Debtor and his spouse filed their first motion to dismiss the original complaint. They argued that the Illinois Fraudulent Transfer Act was inapplicable to transfers of property to tenancy by the entirety and that any claim that the transfer was avoidable must be analyzed under the standards prescribed in § 12–112. On January 16, 1998, the Court denied the motion to dismiss based in part on the Court's decision in *Voiland v. Gillissie (In re Gillissie)*, 215 B.R. 370 (Bankr.N.D.Ill.1997). The Court gave the Debtor and his spouse leave to file an answer to the complaint by a date certain. On January 23, 1998, they filed a notice of appeal and moved for an interlocutory appeal based on the Court's denial of that motion to dismiss.

After granting the motion for an interlocutory appeal, on July 30, 1998, Judge Robert W. Gettleman of the United States District Court for the Northern District of Illinois, reversed this Court's denial of the motion to dismiss the original complaint and remanded the matter for further proceedings. *See Brown v. Stacy ( In re Stacy)*, 223 B.R. 132 (N.D.Ill.1998). Specifically, Judge Gettleman determined that the Court erred when it denied the motion to dismiss. He held that only amended § 12–112 should have applied to the matter and the Illinois Fraudulent Transfer Act was inapplicable. *Id.* at 136. He opined that "to avoid a transfer under

§ 12–112, the creditor must prove, (1) that the debtor was unable to pay existing debts as they became due, and (2) that the debtor transferred the property to a tenancy by the entirety for the sole, exclusive purpose of avoiding those debts." *Id.*

The Trustee filed an amended complaint on September 21, 1998. Therein, the Trustee asserts under Count I that the transfer of the Hinsdale Property from the land trustee to the Debtor and his spouse as tenants by the entireties was fraudulent in violation of the Illinois Fraudulent Transfer Act and § 12–112. Most significantly for purposes of the motion at bar, the amended complaint in paragraph 10 alleges that the Debtor, with the sole intent to avoid the payment of the debt owed to Days Inn, made the transfer into the entireties and that the debt was beyond his ability to pay it. Thus, the Trustee asks the Court to avoid and set aside the transfer of the Debtor's interest in the Hinsdale Property pursuant to 740 ILCS 160/8, 735 ILCS 5/12–112 and 11 U.S.C. § 544(b). Under Count II of the amended complaint, the Trustee alleges that the Debtor claimed his entire interest in the Hinsdale Property exempt on his Schedule C. The Trustee argues that to the extent that the transfer of ownership in the Hinsdale Property into a tenancy by the entireties is avoided under Count I, then his claim of exemption must also fail.

The Debtor and his spouse filed the instant motion to dismiss on October 26, 1998. They allege that the amended complaint should be dismissed with prejudice for two reasons: (1) it seeks relief under the Illinois Fraudulent Transfer Act, which Judge Gettleman held inapplicable; and (2) it does not allege that Days Inn held a judgment against the Debtor when he and his spouse transferred the Hinsdale Property into tenancy by the entirety, which they contend is a requirement under § 12–112 to avoid the transfer. They conclude that for purposes of applying § 12–112, the Debtor had no "existing debt" at the time of the transfer. It is undisputed that Days Inn did not have a judgment against the Debtor at the time of the transfer of the Hinsdale Property into tenancy by the entirety.

### III. *APPLICABLE STANDARDS*

In order for the Debtor and his spouse to prevail on their motion to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) and its bankruptcy analogue Federal Rule of Bankruptcy Procedure 7012, it must clearly appear from the pleadings that the Trustee can prove no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Colfax Corp. v. Illinois State Toll Highway Auth.,* 79 F.3d 631, 632 (7th Cir. 1996) (citation omitted); *Meriwether v. Faulkner,* 821 F.2d 408, 411 (7th Cir.), *cert. denied,* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987). The Seventh Circuit has emphasized that "[d]espite their liberality on pleading matters … the federal rules still require that a complaint allege facts that, if proven, would provide an adequate basis for each claim." *Gray v. Dane County,* 854 F.2d 179, 182 (7th Cir.1988) (citations omitted). It is well established that alleging mere legal conclusions, without a factual predicate, is inadequate to state a claim for relief. *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir. 1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Moreover, the Court must take as true all well pleaded material facts in the complaint, and must view these facts and all reasonable inferences which may be drawn from them in a light most favorable to the Trustee. *See Northern Trust Co. v. Peters,* 69 F.3d 123, 129 (7th Cir.1995); *Infinity Broadcasting Corp. of Illinois v. Prudential Ins. Co. of America,* 869 F.2d 1073, 1075 (7th Cir.1989); *Corcoran v. Chicago Park Dist.,* 875 F.2d 609, 611 (7th Cir.1989); *Marmon Group, Inc. v. Rexnord, Inc.,* 822 F.2d 31, 34 (7th Cir.1987). The issue is not whether the Trustee will ultimately prevail, but whether he has pleaded a cause of action sufficient to entitle him to offer evidence in support of his claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. *Demitropoulos v. Bank One Milwaukee, N.A.,* 915 F.Supp. 1399, 1406 (N.D.Ill.1996)

(citing *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990)).

### IV. *DISCUSSION*

 First, the Court will address the Trustee's argument that the Illinois Fraudulent Transfer Act is inapplicable. Judge Gettleman stated that "[i]n the instant case, [the Debtor and his spouse] argue that because the amended § 12–112 must be applied, the [Illinois Fraudulent Transfer Act] is inapplicable and the motion to dismiss should have been granted. The court agrees." *Stacy,* 223 B.R. at 136. Based upon Judge Gettleman's decision, which serves as the law of the case, the Court finds that the Trustee's requested relief in Count I of the amended complaint under the Illinois Fraudulent Transfer Act is improper. The law of the case doctrine requires a lower court judge to comply with the rulings made by higher courts in the same case. *See State of Arizona v. State of California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983); *Cole Energy Dev. Co. v. Ingersoll–Rand Co.,* 8 F.3d 607, 609 (7th Cir.1993) (citations omitted). "[E]xplicit rulings on issues that were before the higher court and explicit directives by that court to the lower court concerning proceedings on remand are not dicta." *Id.* (citations omitted). Reference in the complaint to the Illinois Fraudulent Transfer Act is surplusage. Judge Gettleman held that such an avoidance action as alleged by the Trustee must be solely based upon and is subject to the requirements of § 12–112.

 Next, and at the real heart of the motion, the Debtor and his spouse argue that the amended complaint should be dismissed because Days Inn did not have an "existing debt" for purposes of § 12–112. Section 12–112 provides in relevant part:

> *Any real property,* or any beneficial interest in a land trust, *held in tenancy by the entirety shall not be liable to be sold upon judgment* entered on or after October 1,

1990 against only one of the tenants, *except if the property was transferred into tenancy by the entirety with the sole intent to avoid the payment of debts existing at the time of the transfer* beyond the transferor's ability to pay those debts as they become due.

735 ILCS 5/12–112 (emphasis supplied). This section insulates property held in tenancy by the entirety from forced sale by a judgment creditor of only one of the tenants with one exception—where the transfer was made with the proscribed sole intent.

Judge Gettleman interpreted this section to require that the Trustee prove: "(1) that the debtor was unable to pay *existing debts* as they became due, and (2) that the debtor transferred the property to a tenancy by the entirety for the sole, exclusive purpose of avoiding those debts." 223 B.R. at 136 (emphasis supplied). Count I of the Trustee's amended complaint does in fact allege that the Debtor was unable to pay existing debts as they became due and that the Debtor transferred the Hinsdale Property to tenancy by the entirety for the sole purpose of avoiding those debts. Thus, the Trustee's amended complaint facially alleges both parts of Judge Gettleman's two-part test for avoiding a transfer under § 12–112.

The Court notes that Judge Gettleman's view that only § 12–112's text should be used to measure the sufficiency of an action to challenge a transfer into a tenancy by the entirety was essentially adopted by a recent decision of the Illinois Appellate Court. *See Harris Bank St. Charles v. Weber*, 298 Ill. App.3d 1072, 233 Ill.Dec. 194, 700 N.E.2d 722 (2d Dist.1998). The majority opinion in *Weber* sua sponte noted that the amendment to § 12–112 was intended to clarify existing law and was an obvious legislative effort to override the result in *E.J. McKernan Co. v. Gregory*, 268 Ill.App.3d 383, 205 Ill.Dec. 763, 643 N.E.2d 1370 (2d Dist.1994). Moreover, the *Weber* court opined that the case of *In re Marriage of Del Giudice*, 287 Ill.App.3d 215,

222 Ill.Dec. 640, 678 N.E.2d 47 (1st Dist. 1997) was inconsistent with the amendment to § 12–112 because the statute does not reference the Illinois Fraudulent Transfer Act. *Weber*, 233 Ill.Dec. 194, 700 N.E.2d at 728–29. The question of a debtor's intent at the time of the transfer is for the trier of fact. *Id.*, 233 Ill.Dec. 194, 700 N.E.2d at 729. In a specially concurring opinion in *Weber*, however, Justice Hutchinson would instruct the trial court to consider the "badges of fraud" or factors from § 5(b) of the Illinois Fraudulent Transfer Act (740 ILCS 160/5(b)) to assist in determining the "sole intent" for purposes of applying § 12–112. *Id.*, 233 Ill. Dec. 194, 700 N.E.2d at 732.

The nub or narrow issue is whether Days Inn's disputed claim at the time of the transfer was an "existing debt." The Debtor and his spouse contend that an "existing debt" for purposes of § 12–112 is limited to one on which judgment has already been entered at the time of the transfer of the residence into tenancy by the entirety. It is undisputed that the Debtor transferred the Hinsdale Property on November 21, 1994 into tenancy by the entirety. Days Inn obtained a judgment against the Debtor on September 16, 1996. The Trustee argues that the Debtor's disputed obligation to Days Inn existed before the Hinsdale Property was transferred, and that is sufficient to constitute an "existing debt" under § 12–112.

The Court disagrees that the language "existing debt" as utilized in § 12–112 is limited only to one on which judgment has already been entered in favor of a creditor at the time of the transfer of the property. First, the plain language of the enacted statute does not lend support to this argument. The Illinois General Assembly could easily have used the phrase "existing debt on/for which judgment has been entered" or similar language if such was intended. In Illinois, the primary goal of statutory construction is to ascertain and effectuate the legislature's intent. *See In re Barker*, 768 F.2d 191, 194 (7th Cir.1985) (citing *In re Marriage of Logston*, 103 Ill.2d 266, 277, 82 Ill.Dec. 633, 469 N.E.2d 167, 171 (1984)). " 'Our task is to

apply the text, not to improve upon it.'" *In re Platter,* 140 F.3d 676, 681 (7th Cir.1998) (quotation omitted). To find that intent, the Court must start with the language of the statute. *Barker,* 768 F.2d at 194 ("In construing a statute, a court should first examine the statutory language itself."). If the statute's language is unambiguous, the Court cannot resort to extrinsic aids in construing the statutory language and must enforce a constitutionally valid statute as enacted. *Id.* at 194–95 (citation omitted). A statute is ambiguous if it is susceptible of more than one accepted meaning. *Williams v. Peoples First Nat. Bank & Trust Co. (In re Allen),* 221 B.R. 232, 235 (Bankr.S.D.Ill.1998) (citation omitted). It is assumed, however, that the words of the statute are used in their ordinary sense, and if the language of the statute is clear, the Court should follow that language rather than isolated excerpts from the legislative history. *Id.* (citations omitted). In the absence of statutory definitions indicating a different legislative intent, words in a statute are to be given their ordinary and popularly understood meaning. *In re Langa,* 222 B.R. 843, 845 (Bankr.C.D.Ill. 1998) (citing *People ex rel. Daley v. Datacom Sys. Corp.,* 146 Ill.2d 1, 15, 165 Ill.Dec. 655, 585 N.E.2d 51, 57 (1991)). Courts "appropriately may refer to a statute's legislative history to resolve statutory ambiguity...." *Toibb v. Radloff,* 501 U.S. 157, 162, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). However, "[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete...." *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981) (citation omitted). *See also United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ("where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'"). The Court concludes that the plain meaning of the phrase "existing debt" is not limited to only those debts which have been reduced to judgment in favor of one or more creditors.

Section 12–112 does not define the term "existing debt." Significantly, the language of § 12–112 makes no distinction between debts that are being disputed and those that have been reduced to judgment. The plain meaning of "existing debt" seems to this Court to encompass those debts which exist or are in being that have yet to be reduced to judgment. Black's Law Dictionary defines existing debt as "it is sufficient if there is an absolute debt owing though the period for its payment may not yet have arrived." Black's Law Dictionary 574 (6th ed.1979). Webster's Third New International Dictionary definitions for debt include "a state of owing;" "something (as money, goods, or services) owed by one person to another;" "something owed;" "the common-law action for the recovery of a certain specified sum of money held to be due or of a sum that can be simply and certainly ascertained." *Id.* at 583. Webster's also defines "existing" to include "to have being in any specified condition or place or with respect to any understood limitation" and " to continue to be" among other definitions. *Id.* at 796. An "existing debt" within the provision of the Uniform Fraudulent Conveyance Act defining insolvency need not be a debt which is matured, liquidated, absolute or fixed. It is an existing legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent. *See Continental Bank v. Marcus,* 242 Pa.Super. 371, 363 A.2d 1318, 1320 (Pa.Super.1976); *Baker v. Geist,* 457 Pa. 73, 321 A.2d 634, 636 (Pa.1974).

Though disputed at the time of the transfer, Days Inn's claim against the Debtor was pending at that time and was for an amount certain. A fair application of the plain meaning of the phrase "existing debt" cuts against the Debtor and his spouse's argument that Days Inn was required under the statute to have a judgment before § 12–112 could be invoked to attempt to avoid the transfer. Moreover, the legislature easily could have utilized the term "judgment" or "judgment debt" somewhere in the text of § 12–112 if only judgment creditors were intended to be protected by the exception carved out by the 1997 amendment to § 12–112. Instead, the phrase "existing debt" was employed which

encompasses much more than judgments against debtors as the above authorities demonstrate.

The Debtor and his spouse argue that the legislative history shows that § 12–112 was amended to deal with the transfer of a debtor's residence into tenancy by the entirety only in the face of a judgment. Specifically, they cite to the remarks of Senator Cullerton which provided in relevant part:

> This bill was actually passed as an amendment last year. It deals with tenancy by the entirety. We had passed tenancy by the entirety back in 1990, which is a way of holding title for married couples. There was a case that occurred out in DuPage County where a person had a judgment entered against him for over three hundred thousand dollars and who was—was married at the time, and after the judgment was entered, he then conveyed his property from—joint tenancy to tenancy by the entirety and, in effect, had the effect of working a fraud upon his creditors. So the purpose of this bill is designed to correct that and clarify that, when we passed that law, we—we do want to—if someone has their property in tenancy by the entirety, to protect both parties, but that *if—if you own your property in tenancy—in joint tenancy and there's a judgment against you, that you can't then transfer your property to a tenancy by entirety and avoid paying your creditors.*

State of Illinois, 90th General Assembly, Senate Transcript Debate, S. 465, March 17, 1997 at 30–31 (statement of Senator Cullerton) (emphasis supplied). This may have been the Senator's view, but limiting the exception only in favor of judgment creditors is not the text of what the General Assembly legislated. The statutory language does not conclusively establish that the Illinois General Assembly intended that "existing debt" be equated with a creditor's claim which has been reduced to judgment. A fair application of the plain meaning of the statute does not require such a narrow reading.

■ When the cited legislative gloss is at some variance with the plain meaning of the statutory text, the latter controls, not the former. As Judge Easterbrook stated in *In re Sinclair*, 870 F.2d 1340 (7th Cir.1989), "[l]egislative history may show the meaning of the texts—may show, indeed, that a text 'plain' at first reading has a strikingly different meaning—but may not be used to show an 'intent' at variance with the meaning of the text." *Id.* at 1344. He went on to further state that "legislative intent is a vital source of meaning even though it does not trump the text [of the statute]." *Id.*

With this in mind, the Court declines to adopt the Debtor's view that the phrase "existing debt" as utilized in § 12–112 mandates that a judgment be entered before a creditor, or in this case a bankruptcy trustee, has standing to invoke the potential exception available to the protection afforded debtors who hold homestead property as tenants by the entirety along with their non-debtor spouses. The result will put the Trustee to his proof and the difficult burden to show by a preponderance of the evidence that at the time of the transfer the Debtor was unable to pay his existing debts as they became due and that the Debtor transferred the Hinsdale Property with the sole intent and exclusive purpose of avoiding those debts. This is a substantial burden, but the Trustee should be afforded the opportunity of attempting to prove his case at a trial on the merits.

## V. CONCLUSION

For the foregoing reasons, the Court denies the motion to dismiss the amended complaint. The Debtor and his spouse shall file an answer and any affirmative defenses within thirty days hereof. Concurrently entered herewith is a Preliminary Pretrial Order setting this adversary proceeding for pretrial conference on February 5, 1999 at 9:00 a.m.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.